1

2

3                    **UNITED STATES DISTRICT COURT**

4                         **DISTRICT OF NEVADA**

5  UNITED STATES OF AMERICA,

                                        Case No. 2:18-cr-00253-APG-NJK
6               Plaintiff,

   vs.                                  REPORT AND RECOMMENDATION
7
   ANTHONY UVARI,                       (Docket No. 57)
8
                Defendant.
9

10        This matter was referred to the undersigned Magistrate Judge on Defendant Anthony

11  Uvari's motion to dismiss case for spoliation of evidence.  Docket No. 57.  The Court has

12  considered Defendant's motion and exhibits, the United States' response and exhibits, and

13  Defendant's reply and exhibit.  Docket Nos. 57, 58, 59, 64, 67.

14  **I.    BACKGROUND**

15        On April 21, 2018, a federal grand jury sitting in Las Vegas, Nevada issued an indictment

16  charging Defendant with four counts of making and subscribing false tax returns, in violation of

17  Title 26, United States Code, Section 7206(1).  Docket No. 1.  The indictment alleges charges

18  based on returns Defendant allegedly filed in 2012 and 2013.  *Id*. at 2.

19        On September 18, 2019, Defendant filed a motion to compel discovery.  Docket No. 23.

20  Defendant submitted that certain documentation relating to the civil tax investigation of him had

21  not been disclosed in the instant case and asked the Court to order the United States to produce it

22  to him.  *Id*.  The Court set a hearing on Defendant's motion, which was continued several times

23

at the parties' request.  Docket Nos. 41, 43, 45, 46.  Eventually, based on the representations of the parties, the Court denied Defendant's motion to compel.  Docket No. 46.

## II.    **MOTION TO DISMISS**

On September 8, 2020, Defendant filed the instant motion to dismiss for spoliation of evidence.  Docket No. 57.  Defendant asks the Court to dismiss Counts 2 through 4 of the indictment and/or to give an adverse jury instruction due to spoliation of evidence.  *Id*. at 1, 2. Specifically, Defendant submits that the United States has failed to retain records of communications with him, as well as his accountants and his attorneys.  *Id*. at 1.  Defendant submits that the United States has determined that it has disclosed all records in its possession; however, Defendant is in possession of additional letters from the Internal Revenue Service ("IRS") that have not been provided in discovery.  *Id*. at 1-2.  Further, Defendant submits, an expert who has reviewed the discovery he has been provided, determined that "there were likely other relevant and discoverable records generated during the extensive civil investigation and during the criminal investigation prior to [his] indictment."  *Id*. at 2, 8-9.  Defendant further submits that the missing communications go directly to his defense and the United States' burden of proof regarding his mental state.  *Id*.  As such, he submits, the "evidentiary and potentially exculpatory value of these records was evident."  *Id*.  Therefore, Defendant concludes, the records were "destroyed by the government either deliberately or through negligent failure to preserve them."  *Id*.

Defendant submits that he and several of his representatives had "repeated direct communication with the IRS" regarding his tax returns over the course of six years after 2013. *Id*. at 3.  Defendant lists some of the communications and how they relate to the returns that

2

constitute the basis for the specific counts in the indictment. *Id*. at 3-5. According to Defendant, the United States has produced some 9,000 pages of discovery in the instant case. *Id*. at 6. Nonetheless, he submits, the discovery production contains few communications regarding the civil and collections investigations. *Id*. Further, Defendant submits, his accountant, Ronald Carroccio provided documents to defense counsel that reflected communication between the IRS and either Mr. Carroccio or Defendant that were not included in the discovery production. *Id*. Defendant submits that Mr. Carroccio's office was flooded during Hurricane Sandy in 2012; therefore, Defendant's client file was damaged "beyond recovery" and he could not provide further documents to defense counsel. *Id*.

Defendant submits that he has tried to obtain copies of all correspondence and records of communication from the United States. *Id*. at 6. Defendant submits that the United States has determined that it has no further documents; however, it has made that same determination in the past before discovering and providing to Defendant more documents. *Id*. at 6-8. Defendant further submits that he and his representatives engaged in a "steady stream" of communication with the IRS between February 2012 and August 2018. *Id*. at 9. Defendant submits that records of these communications "would provide valuable evidence as to [his] knowledge and state of mind prior to his filing the corporate returns" charged in the instant case. *Id*. Finally, Defendant submits that he has exhausted every possible source for the documents to no avail; therefore, he asks the Court to dismiss counts two through four and to issue an adverse jury instruction as to count one of the indictment. *Id*.

In response, the United States submits that the crimes with which Defendant is charged were complete when he signed and filed the tax returns on the dates charged in the indictment.

Docket No. 64 at 1. After he filed those returns, however, the United States submits, Defendant "repeatedly called and wrote letters to the IRS – sometimes himself, but largely through tax professionals – in an ongoing effort to obtain the fraudulent tax refunds." *Id*. The United States further submits that the IRS did not memorialize in writing the substance of every phone call or retain copies of every letter from Defendant and/or his representatives. *Id*. at 1-2.

The United States submits that three reasons exist as to why Defendant's request should be denied: first, the IRS does not spoliate evidence by not recording phone calls or creating internal copies of form letters and, since much of the evidence Defendant requests likely never existed, it cannot be considered spoliated; second, even if the evidence did exist, there is nothing to demonstrate that Defendant's communications in his ongoing efforts to receive a tax refund would exculpate his original submission of the tax return; and third, all of the correspondence was made after the tax returns were filed and, therefore, the after-the-fact communications would have little bearing on Defendant's intent at the time he filed the tax returns. *Id*. at 2.

The United States submits that Defendant was indicted on a tax fraud case in New York in 2005 and that the facts of that case demonstrate that Defendant has known how to manipulate tax returns since tax year 2003. *Id*. at 2-3. The United States further submits that, after the New York case, Defendant began engaging in fraudulent tax withholdings, and describes how such a scheme would work. Id. at 3-4. The United States submits that Defendant received what appear to be fraudulent tax refunds from the IRS for tax years 2006-2010. *Id*. at 4. The United States submits that Defendant "massively increased the scale of his fraud" in 2012, when he filed his return for tax year 2011 which requested an income tax refund of $561,144. *Id*. After the IRS requested supporting documents, the United States submits, Defendant (through Mr. Carroccio)

4

1    submitted documents that were purportedly from companies that had no record of Defendant. *Id*.

2    at 4-5. As a result, the IRS declined the refund. *Id*. at 6.

3        The United States submits that, in May 2012, Defendant filed a corporate tax return that

4    sought a fraudulent refund of $105,142 "on the basis of false withholdings from bank payments."

5    *Id*. The United States further submits that the bank had no records of payments to or tax

6    withholdings from Defendant's corporate entity. *Id*. The United States further submits that

7    count three of the indictment is based on a corporate tax return Defendant filed on October 1,

8    2012, which claims a refund of $114,130. *Id*. at 7. In this instance, the United States submits,

9    the IRS issued the refund check, and Defendant deposited it into his account. *Id*. Like the May

10    2012 return, however, the United States submits that the documentation for this refund is

11    fraudulent. *Id*. Finally, the United States submits that, in May 2013, Defendant submitted a

12    2011 corporate tax return for his company, requesting a $72,118 refund based upon withholding

13    from a bank. *Id*. at 8. The United States submits that the bank in question had no record of

14    Defendant's business and that the supporting documents are not genuine; therefore, the IRS

15    refused to pay the refund. *Id*.

16        The United States submits that, between 2012 and 2017, Defendant made numerous

17    attempts to collect these tax refunds. *Id*. at 9. The United States further submits that the alleged

18    spoliated evidence, according to Defendant, consists largely of phone calls and correspondence

19    from Mr. Carroccio attempting to collect the refunds on Defendant's behalf. *Id*. at 11. These

20    communications, the United States submits, are "almost entirely" identified by reference to

21    communications that it did produce in discovery. *Id*. The United States lists those

22    communications, as well as the allegedly spoliated evidence that arises from them. *Id*. at 11-13.

23

1   Notably, some of the allegedly spoliated evidence consists of originals of documents Defendant

2   possesses, some of it involves evidence that may never have existed in the first place, and some

3   involves documents that Defendant has already obtained from another source. *Id*. at 11-13, 17.

4   The United States also submits that the "overwhelming majority" of the documents Defendant

5   requests consist of communication between his representatives and the IRS; therefore, the

6   documents cannot demonstrate Defendant's mental state and intent. *Id*. at 19. Additionally, the

7   United States submits that nothing exists to indicate that these documents could be exculpatory.

8   *Id*. at 19-22. Finally, the United States submits that it has searched diligently for more

9   documents and has attempted to obtain additional IRS files; nonetheless, it does not believe it

10  will find relevant substantive evidence in its further searches. *Id*. at 14.

11       In reply, Defendant submits that the United States has assured both him and the Court on

12  prior occasions that no more documents exist and has then found and produced more documents.

13  Docket No. 67 at 2. Defendant submits that the United States even produced a "small batch of

14  discovery" to Defendant after it filed its response to the instant motion. *Id*. Defendant further

15  submits that the new documents indicate that Mr. Carroccio was at one point potentially

16  considered as an alternate suspect or co-conspirator. *Id*. at 2-3. Defendant therefore submits that

17  the Court cannot rely on the United States' representation that no further documents exist. *Id*. at

18  4. Defendant submits that the nature of the communications suggests that they are exculpatory

19  because Mr. Carroccio submitted fraudulent tax returns on his own behalf at the same time as he

20  submitted Defendant's and because Mr. Carroccio was the one communicating with the IRS

21  while preparing Defendant's corporate returns. *Id*. Defendant submits that Mr. Carroccio's

22  communications with the IRS are relevant to whether Defendant knew that Mr. Carroccio created

23

6

fraudulent tax returns and filed them on his behalf. *Id*. Defendant further submits that he cannot obtain these documents from any other source. *Id*. at 5-6. Therefore, Defendant asks the Court to dismiss the indictment or, alternatively, dismiss counts two through four of his indictment and order than an adverse jury instruction must be given. *Id*. at 6-7.

III.   **LEGAL STANDARDS**

A.   Dismissal for Failure to Preserve Evidence

The Due Process Clause requires the government to preserve evidence "that might be expected to play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). "The government violates a defendant's due process rights when it destroys potentially exculpatory evidence in bad faith." *United States v. Ubaldo*, 859 F.3d 690, 703 (9th Cir. 2017) (citing *United States v. Estrada*, 453 F.3d 1208, 1212–13 (9th Cir. 2006)). In order for destruction of evidence to rise to the level of a due process violation, a defendant must make two showings: (i) "the government acted in bad faith, the presence or absence of which turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed;" and (ii) "the missing evidence is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (internal quotation omitted) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56–57 (1988); *Trombetta*, 467 U.S. at 489; *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993)). "Another configuration of this test requires the showing of bad faith where the evidence is only potentially useful and not materially exculpatory." *Sivilla*, 714 F.3d at 1172 (citing *United States v. Del Toro-Barboza*, 673 F.3d 1136, 1149 (9th Cir.

1  2012)).  "For evidence to be materially exculpatory, its exculpatory nature must be apparent.  *Id*.

2  (citing *Del Toro-Barboza*, 673 F.3d at 1149).

3        The presence or absence of bad faith necessarily turns on the officers' "knowledge of the

4  exculpatory value of the evidence at the time it was lost or destroyed."  *Youngblood*, 488 U.S. at

5  56 n.1; *Sivilla*, 714 F.3d at 1172.  Bad faith requires a showing of malicious intent to withhold

6  evidence that may have value to the defense.  *See Estrada*, 453 F.3d at 1213.  Negligence in

7  failing to preserve potentially useful evidence is not sufficient to constitute bad faith and does

8  not violate due process.  *Grisby v. Blodgett*, 130 F.3d 365, 371–72 (9th Cir. 1997*); see also*

9  *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011) ("Bad faith requires more than mere

10  negligence or recklessness."); *Phillips v. Woodford*, 267 F.3d 966, 987 (9th Cir. 2001) (an

11  officer's mere failure to "preserve evidence which could have been subjected to tests which

12  might have exonerated the defendant does not constitute a due process violation") (quoting

13  *United States v. Hernandez*, 109 F.3d 1450, 1455 (9th Cir. 1997)). To merit an evidentiary

14  hearing, a defendant must make a colorable showing that the government destroyed evidence to

15  prevent the disclosure of favorable evidence to the defense, or that the exculpatory value of the

16  evidence was apparent prior to its destruction.  *See Phillips*, 267 F.3d at 987.

17        B.  Remedial Jury Instruction

18        In determining whether a remedial jury instruction should be given, courts must balance

19  "the quality of the Government's conduct" against "the degree of prejudice to the accused."

20  *Sivilla*, 714 F.3d at 1173 (quoting *United States v. Loud Hawk*, 628 F.2d 1139, 1152 (9th Cir.

21  1979) (*en banc*)) (internal quotation marks omitted).  The government bears the burden of

22  justifying its conduct, and the defendant bears the burden of demonstrating prejudice.  *Id*.  In

23

8

evaluating the government's conduct, the court should inquire whether: (1) the evidence was lost or destroyed while in the government's custody; (2) the government acted in disregard for the interests of the accused; (3) the government was negligent in failing to adhere to established and reasonable standards of care for police and prosecutorial functions; (4) if the acts were deliberate, whether they were taken in good faith or with reasonable justification; and (5) whether government attorneys prosecuting the case participated in the events leading to the loss or destruction of the evidence. *Sivilla*, 714 F.3d at 1173. In analyzing prejudice, Courts consider the centrality and importance of the lost evidence to the case, the probative value and reliability of secondary or substitute evidence, the nature and probable weight of inferences and kinds of proof lost to the accused, and the probable effect on the jury from the absence of the evidence. *United States v. Robertson*, 895 F.3d 1206, 1214 (9th Cir. 2018).

IV.    **ANALYSIS**

The Court finds that Defendant has failed to make the two showings necessary under the caselaw for dismissal of the indictment against him: (i) "the government acted in bad faith, the presence or absence of which turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed;" and (ii) "the missing evidence is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Sivilla*, 714 F.3d at 1172.

Specifically, the Court finds that Defendant cannot demonstrate that many of the documents ever existed in the first place; therefore, they could not have been destroyed. Further, the Court agrees with the government's argument and finds that Defendant has not demonstrated that any of the requested documents, whether or not they existed, had apparent exculpatory

1 value.  Therefore, Defendant cannot demonstrate that the United States acted in bad faith and
2 Defendant cannot meet the first prong of the test.  Although the Court need not reach the second
3 prong, Defendant has already obtained some of the requested documents by alternate means.[1]

4      Alternatively, Defendant requests a remedial jury instruction.  In evaluating the
5 government's conduct, the court should inquire whether:  (1) the evidence was lost or destroyed
6 while in the government's custody; (2) the government acted in disregard for the interests of the
7 accused; (3) the government was negligent in failing to adhere to established and reasonable
8 standards of care for police and prosecutorial functions; (4) if the acts were deliberate, whether
9 they were taken in good faith or with reasonable justification; and (5) whether government
10 attorneys prosecuting the case participated in the events leading to the loss or destruction of the
11 evidence.  *Sivilla*, 714 F.3d at 1173.

12      In evaluating the government's conduct, the Court cannot find that all of the requested
13 evidence ever existed.  Further, some of the evidence was lost or destroyed in the office of
14 Defendant's representative, due to a Hurricane.  For evidence that may have existed, the Court
15 has already found that it has not been shown to be exculpatory.  In fact, the United States submits
16 that the evidence that does exist indicates that the requested documents would not have been
17 exculpatory.  Docket No. 64 at 19-22.  The Court further finds that no evidence exists that the
18 government took any action in disregard for Defendant's interests, that the government failed to
19 adhere to established standards of care, or that the failure to preserve any evidence that did exist

20
_____

21 [1]      The Court is not persuaded by Defendant's argument that he cannot obtain any
documents from Mr. Carroccio due to Hurricane Sandy in 2012.  Mr. Carroccio represented
Defendant's interests with the IRS long after 2012; therefore, post-2012 documents should be
22 available from Mr. Carroccio even if the pre-2012 documents are not.

23                                          10

was done deliberately.  Finally, for most of the time alleged, prosecutors were not involved and, therefore, no evidence exists to indicate that prosecutors participated in the events regarding the requested documents.

In assessing the prejudice to Defendant, the Court finds that the potential existence of the requested documents, not to mention the exculpatory nature of such evidence, is entirely speculative.  Therefore, the Court cannot find that the requested evidence is central to the case or important in establishing the elements of the crime.

The Court finds that the record simply does not support a finding that the requested documents, whether or not they existed in the first place, were exculpatory or useful to Defendant.  Further, the record does not support a finding that any exculpatory or useful value of this evidence, if it existed, was apparent to IRS agents during the long investigation into Defendant's tax returns and requested refunds.  The Court therefore finds that the quality of the government's conduct outweighs any prejudice to Defendant and that an adverse jury instruction is inappropriate in this instance.

## V.    RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

**IT IS RECOMMENDED** that Defendant's motion to dismiss the indictment, including Defendant's alternative request for an adverse inference jury instruction, be **DENIED**.  Docket No. 57.

DATED: November 17, 2020.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

11

## <u>NOTICE</u>

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).    A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).