**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>vs.<br><br>ANTHONY UVARI,<br><br>         Defendant. | Case No. 2:18-cr-00253-APG-NJK<br><br>**REPORT AND RECOMMENDATION**<br><br>[Docket No. 89] |

This matter was referred to the undersigned Magistrate Judge on Defendant Anthony Uvari's motion to dismiss Counts One and Two of the Indictment. Docket No. 89. The Court has considered Defendant's motion, the United States' response, and Defendant's reply. Docket Nos. 89, 90, 91. This matter is properly resolved without a hearing. Local Rule 78-1.

**I.      BACKGROUND**

On August 21, 2018, a federal grand jury sitting in Las Vegas, Nevada issued an Indictment, charging Defendant with four counts of making and subscribing false tax returns, in violation of 26 U.S.C. § 7206(1). Docket No 1. The underlying counts pertain to individual and corporate income tax returns filed for the 2010 and 2011 tax years. *Id.* The applicable statute of limitations for obtaining an indictment for a violation of 26 U.S.C. § 7206(1) is six years from the date of the last act that constitutes the commission of the offense. 26 U.S.C. 6531(5).

Defendant submits that Count One and Two of the Indictment were time-barred at the time the Indictment was obtained due to two invalid statute of limitations waivers. Docket No. 89 at 2. Defendant submits that the waivers should be analyzed according to contract law principles, and that they fail under that analysis due to ambiguity, lack of consideration, and improper execution. *Id.* at 5-8. Defendant further submits that the language in the waivers fails to provide sufficiently specific information to Defendant about the implications of the waiver. Docket No. 91 at 3-4. Additionally, Defendant submits that, should the Court find the waivers valid on their face, he did not knowingly and voluntarily sign them because he received ineffective assistance of counsel. Docket No. 89 at 8-10.

In response, the United States submits that the statute of limitations had not expired at the time the Indictment was issued in 2018.[1] Docket No. 90 at 5-6, 13, 19. The United States further submits that the waivers were valid both on their face and in their execution. *Id.* at 8-17. The United States also submits that Defendant's arguments about his lack of knowledge and information about the implications of the waivers prior to signing them fall flat given the multi-year correspondence between Defendant, the Internal Revenue Service ("IRS"), and the United States Attorney's Office regarding Defendant's status as a target of investigation for the offenses for which he was later indicted. *Id.* at 12-13. These communications included discussions with the IRS about extending the statute of limitations during their investigation. *Id.* at 11. Finally, the United States submits that the waivers simply excluded the covered period from the statute of limitations calculation. *Id.* at 19-20. Even if the second waiver was invalid, the United States

---

[1] The United States submits that approximately four weeks remained under the statute of limitations for the first count. Docket No. 90 at 13. As discussed below, the Court's calculation is that 29 days remained under the statute of limitations as to Count One and 135 days remained as to Count 2.

submits it still had the 120 days previously tolled by the first waiver prior to indictment. Since the second waiver was obtained prior to the expiration of the statute of limitations period that had been tolled, the United States submits, the motion must fail. *Id.* at 20.

## II.   ANALYSIS

Under Rule 12(b) of the Federal Rules of Criminal Procedure, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." One such defense a defendant can raise is a challenge to the validity of an indictment for being obtained in violation of the statute of limitations for the charged offense.

Statutes of limitations are "predictable, legislatively enacted limits on prosecutorial delay. . . ." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (internal citations omitted). Statutes of limitations exist to protect defendants from lengthy preindictment delays. *Id.* While they are not the sole protection for defendants, statutes of limitations have important implications for the realization of a criminal defendant's Speedy Trial rights under the Sixth Amendment. *Id.* at 788-89 (explaining that the realization of a defendant's speedy trial rights are protected in part by the constraints placed on a prosecutor's ability to seek an indictment, including the statute of limitations for a given charge). The Supreme Court has held that these limitations are to be "liberally interpreted in favor of repose." *Toussie v. United States*, 397 U.S. 112, 115 (1970).

A violation of the statute of limitations is a non-jurisdictional defense to the validity of a count of an indictment. *Musacchio v. United States*, 136 S.Ct. 709, 718 (2016). The defense is properly asserted only at or before trial, otherwise it is considered waived. *United States v. Chung Lo*, 231 F.3d 471, 480 (9th Cir. 2000). When the defense is properly asserted, the United States bears the burden of establishing compliance with the statute of limitations period by providing

evidence to support either a finding of compliance or the applicability of an exception to the limitations period. *Musacchio*, 136 S.Ct. at 718.

The affirmative defense of statute of limitations can be waived. *United States v. Akmakjian*, 647 F.2d 12, 14 (9th Cir. 1981). Waiver of the statute of limitations is assessed by a standard of whether the waiver was knowing and voluntary. *United States v. Caldwell*, 859 F.2d 805, 806 (9th Cir. 1988). A waiver is knowing and voluntary if, under the totality of the circumstances, it is made with a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998). When assessing whether a waiver was knowingly and voluntarily made, the Court looks at the express language of the waiver and the accompanying facts and circumstances. *United States v. Nguyen*, 235 F.3d 1179, 1182 (9th Cir. 2000).

Some courts have assessed statute of limitations waivers under the same standards which are used to assess the adequacy of plea agreements. *See, e.g., United States v. Levine*, 658 F.2d 113, 124 (3d Cir. 1981); *United States v. Gentile*, 235 F.Supp. 3d 649, 653 (D.N.J. 2017). The Ninth Circuit recognizes plea agreements as contractual in nature. *United States v. Sandoval-Lopez*, 122 F.3d 797, 800 (9th Cir. 1997); *United States v. Read*, 778 F.2d 1437, 1441 (9th Cir. 1985). Therefore, in the Ninth Circuit, Courts assess the adequacy of a plea agreement pursuant to contract law principles. *United States v. Sar-Avi*, 255 F.3d 1163, 1166 (9th Cir. 2001). In contract, Ninth Circuit precedent requires merely an assessment of whether a statute of limitations waiver was knowingly and voluntarily signed. *Caldwell*, 859 F.2d at 806. While the Court will look at the express language as part of its analysis, it is not limited to a pure contract law analysis

and will consider the language and other facts and circumstances surrounding the signing of the waiver. *See Nguyen*, 235 F.3d at 1182.

### A. Waiver Analysis

The Court finds that the language of both waivers provided Defendant with essential information for weighing the decision of whether to waive the statute of limitations for the periods stated in each waiver. The waivers indicate the offenses for which Defendant was being investigated, including their statutory citations. Further, the waivers clearly state that the applicable statute of limitations is six years from the last act that constitutes the commission of the offense.[2] The provision explaining the period covered by each waiver clearly stated that that period would be excluded from any statute of limitations calculation, and that the basis for signing each waiver was to negotiate a potential resolution of the investigation that did not require the filing of criminal charges against Defendant. Docket No. 89-2 at 29-30. Further, the second waiver included language acknowledging the explicit dates of the period previously excluded by the first waiver. *Id.* at 30. Finally, both waivers acknowledged that Defendant had consulted with his attorneys prior to signing the waivers and that he knowingly and voluntarily executed them. *Id.* at 29-30.

The Court finds that the waivers do not contain ambiguous language. Both waivers clearly state the relevant information and considerations in understandable language. The language used indicates that Defendant was clearly informed about the necessary considerations by the terms of

---

[2] While the language of the waivers themselves did not state the specific dates for the last acts that constitute the commission of the offense for any of the counts ultimately indicted, the available facts indicate Defendant had ample information about which tax returns were at issue to be able to assess the running of the statute of limitations at the time he signed each waiver. Defendant was informed by a target letter that tax returns he had filed for the tax years 2010 and 2011 were under investigation in 2017. Docket Nos. 89-2 at 2, 90-1 at 2. This target letter followed years of communication with the IRS about the tax returns at issue in Counts One and Two of the Indictment. Docket Nos. 90 at 2, 90-2 at 2-5.

each waiver document and that he discussed the decision to sign each waiver with counsel. *See e.g., Ngyuen*, 235 F.3d at 1182 (upholding a waiver where the express language of the waiver clearly recited that the waiver was made knowingly, voluntarily, and in consultation with counsel); *United States v. Medina-Carrasco*, 815 F.3d 457, 461-62 (9th Cir. 2016) (upholding a waiver where the language of the agreement to waiver rights was not ambiguous); *United States v. Sciara*, 245 F.App'x 616, 616 (9th Cir. 2007) (same); *United States v. Meredith*, 726 F.App'x (9th Cir. 2018) (upholding a waiver that included the relevant statutory information about the rights that were being given up and certified that the defendant had discussed them with counsel prior to signing the waiver).

Further, the facts and circumstances demonstrate that Defendant knowingly and voluntarily executed the waivers.[3] The facts provided indicate that Defendant consulted with his counsel about the waivers and weighed the decision before signing each one. Defendant and counsel engaged in numerous conversations and emails about the waivers and about their importance in helping counsel work on Defendant's behalf to attempt to resolve the case short of prosecution.[4]

---

[3] In presenting these circumstances to the Court, Defendant submits, without support, that he received both ineffective assistance of counsel regarding these waivers and that his counsel had a conflict of interest. Defendant submits that he is not raising any Sixth Amendment claim independently but instead provides this information as circumstances surrounding his representation at the time of signing the waivers at issue. Docket No. 91 at 2. The Court only considers well developed arguments. *See e.g., Kor Media Grp., LLC v. Green*, 294 F.R.D. 579, 582 n.3 (D. Nev. 2013). Since these arguments are not developed, the Court does not consider them in its analysis.

[4] Defendant's main contention is that these conversations included discussions about a proposed plea agreement offered by the United States, something that he indicated he was not interested in from the beginning of his representation. Docket No. 89-2 at 2-4. The Court is not persuaded by this contention. Counsel is required to communicate any and all plea offers to a client prior to their expiration and discuss whether the client would like to accept or reject the offer. *See Missouri v. Frye*, 566 U.S. 134 (2012). Further, no right to counsel exists at this juncture. *See United States*

*See* Docket No. 89-2 at 2-3, 12-14, 16-19, 21, 23-24. The facts further establish that Defendant knew that the effect of these waivers would be to toll the statute of limitations, not simply extend it to the end of the waiver period. *Id.* at 8. Accordingly, the Court finds that Defendant knowingly and voluntarily executed both waivers.

### B. Execution Arguments

Defendant contends that the waivers were not properly executed because the United States did not sign them. Docket No. 89 at 7-8. However, Defendant is mistaken in his belief that the waivers must be signed by both parties to be valid. By its definition, a waiver is a "voluntary relinquishment or abandonment – express or implies – of a legal right or advantage." BLACK'S LAW DICTIONARY (11th ed. 2019). No reciprocal promise or agreement is required of another party. The Ninth Circuit has recognized unilateral waivers of rights as valid. *See e.g., Akmakjian*, 647 F.2d at 12 (finding an express waiver of the statute of limitations defense when defendant unilaterally entered his guilty plea after colloquy with the Court); *United States v. Bolinger*, 940 F.2d 478, (9th Cir. 1991) (holding a waiver of the right to appeal valid as a portion of an overall plea agreement when the language of the waiver was unilateral and made no reciprocal promises on behalf of the government); *Richards v. United States*, 972 F.2d 1341 (holding that individually signed written waivers of the right to indictment by defendants are valid).

Here, Defendant signed the waivers, and the language of the waivers only indicates that the Defendant agreed to do something, not that the United States also made any promises in return. *See* Docket No. 89-2 at 29-30. While the language of the waivers indicated that Defendant hoped for pre-indictment resolution of the matter, no explicit promises of such were guaranteed. *Id.* The

---

*v. Olson*, 988 F.3d 1158, 1162-64 (9th Cir. 2021) (explaining there is a "bright-line rule" that there is no Sixth Amendment right to counsel in the pre-indictment plea negotiation period).

Court finds that the United States was not required to sign the waivers and that Defendant's signature on the waivers constituted valid execution of the documents.

**C. Expiration Arguments**

The Court finds that Defendant's arguments about the expiration of the first waiver affecting the validity of the second waiver are without merit. Defendant appears to argue that the statute of limitations would automatically expire at the expiration of the second waiver. Docket No. 89 at 10. The language of the waiver, however, clearly provides that "the period between January 15, 2018 and May 15, 2018, shall be excluded from any calculation of the Statute of Limitations." Docket No. 89-2 at 29. The effect of this language was to toll the statute of limitations for the covered period. By the Court's calculation, 29 days remained before the statute of limitations ran as to the crime alleged in Count One of the Indictment and 135 days remained as to the crime alleged in Count Two at the time Defendant signed the first waiver. Since the waiver tolled that statute of limitations for the covered period, that remaining time existed after the expiration of the covered period.

Defendant further argues that the second waiver cannot properly cover the stated period from "May 15, 2018 to August 15, 2018," because it was not signed until May 21, 2018 by Defendant.[5] Docket No. 89 at 10-11. The waiver, however, was initially provided to Defendant for consideration on May 1, 2018. *Id.* at 16. Counsel provided the waiver to Defendant on the same day the United States provided it. *Id.* Defendant initially waited a week to respond and provided no response regarding whether he wanted to sign it. *Id.* Counsel then followed up on May 21, 2018, having heard nothing from Defendant, reminding him that the government would

---

[5] The first waiver was also executed after the beginning of the covered period on January 22, 2018, though Defendant does not raise this argument as to the first waiver. Docket No. 89-2 at 29.

seek indictment immediately and cease the pre-indictment resolution Defendant sought if he would not sign the waiver. *Id.* at 21. Defendant had ample time to consider whether to sign the waiver before the covered period began. His own delay in responding to it cannot later be used to question the validity of the covered period.

Even assuming the second waiver only validly covered the period from the date of signing until August 15, 2018, however, this would only have shortened the remaining days available for the United States to seek an indictment by 6 days. The United States would have still had 23 days to seek an indictment for the crime alleged in Count One and 129 days to seek an indictment for the crime alleged in Count Two. The indictment issued on August 21, 2018, six days after the second excluded period expired. Docket No. 1. Therefore, the United States clearly sought the indictment within the period of time covered by the statute of limitations.

### III.  CONCLUSION

Based on the foregoing and good cause appearing therefore, **IT IS RECOMMENDED** that Defendants' motion to dismiss the superseding indictment be **DENIED**.

DATED: October 5, 2021.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

### NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file

a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).