1
2
3
4

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

5
6
7
8
9

| UNITED STATES OF AMERICA, | Case No. 2:18-cr-00253-APG-NJK |
| Plaintiff, | **ORDER** |
| v. | [Docket Nos. 118, 139, 142] |
| ANTHONY UVARI, | |
| Defendant. | |

10   Pending before the Court is Defendant Anthony Uvari's motion to compel discovery.

11   Docket No. 118.  The Court has considered Defendant's motion, the United States' response,

12   Defendant's reply, the United States' surreply, and Defendant's response to the United States'

13   surreply.  Docket Nos. 118, 125, 130.  This matter is properly resolved without a hearing.  *See*

14   Local Rule 78-1.  For the reasons discussed below, the Court **GRANTS** in part and **DENIES** in

15   part Defendant's motion.

16   **I.    BACKGROUND**

17   Defendant asks the Court to compel the United States to produce in discovery six specific

18   categories of documents:

19
20
    1.  The case files from *United States v. Jeffrey Jelinsky and Michael Jelinsky*, 2:09-cr-
        00028-RLH-GWF, and *United States v. Jacktrade, LLC*, 2:12-cr-00401-GMN-PAL;

21
22
    2.  All federal reports, narratives, memoranda, and statements regarding unlicensed
        gambling and use of intermediaries in or related to or associated with the case of
        Jacktrade, LLC, and the Jelinsky brothers;

23
    3.  Names and case numbers relating to persons prosecuted for using intermediaries to
        place unlicensed gambling wagers;

24
25
    4.  All law enforcement reports, narratives, or memoranda in the possession of the Internal
        Revenue Service or the Federal Bureau of Investigation regarding the usage of
        intermediaries in unlicensed or illegal bookmaking and gambling operations;

26
27
28
    5.  All law enforcement reports, investigations, narratives, or memoranda in the possession
        of the Internal Revenue Service, Federal Bureau of Investigation, or any other federal
        agencies regarding Churchill Downs, Euro, Racing Services, Inc., Elite Turf, New York
        City OTB; and any other gambling entities the government plans to call to prove its
        case in chief;

6.  All law enforcement reports, investigations, narratives, or memoranda in the possession of the Internal Revenue Service, Federal Bureau of Investigation, or any other federal agencies regarding National Bank Financial Group.

Docket No. 118 at 1-2.

Defendant bases his discovery requests in his right to be able to present a defense. *Id.* at 1. Defendant submits that the United States' theory of the case is that he attached documentation containing fictitious gambling winnings to his personal tax return for the 2011 fiscal year, and the United States must therefore prove that the gambling winnings were fictitious in order to prove its case. *Id.* at 2. Defendant submits that this information must be disclosed because each of the articulated categories may contain evidence material to his defense or that is otherwise exculpatory. *Id.* at 10-11. Defendant further submits that some of the requested information bears on the credibility of witnesses that the United States plans to call at trial, and that discovery is therefore necessary so that Defendant can properly impeach and confront the witnesses against him. *Id.* Defendant asks the Court to compel the United States to produce documents for each of the six categories of material outlined above. *Id.*

The United States asks the Court to deny Defendant's motion because, it submits, Defendant has failed to meet his burden to establish that compulsion of these items is warranted. Docket No. 125 at 13.[1] The United States submits that Defendant has not established that any of the six categories of items he requests is material as the requests are speculative and none has a direct relationship with the instant case. *Id.* at 16-22. The United States further submits that Defendant fails to allege that most of his requests contain documents that actually exist, as required by caselaw. *Id.* The United States therefore asks the Court to deny Defendant's motion. *Id.* at 24.

In reply, Defendant submits that he has made the required showing that the requested information would be relevant to the development of a possible defense under Federal Rule of

---

[1] The United States submits that the instant motion as untimely as the pretrial motions deadline has expired. Docket No. 125 at 11-12, 22-24. While the Federal Rules of Criminal Procedure mandate that discovery motions must be made prior to trial, this Court's Local Rules do not include discovery motions as motions subject to the pretrial motions deadline. *See* Fed. R. Crim. P. 12(b); LCR 12-1. Accordingly, the Court will consider the instant motion on its merits.

Criminal Procedure 16 and asks the Court to grant his motion to compel.[2]  Docket No. 130 at 4-5. Defendant submits that the Ninth Circuit has found that failure to disclose information about similar prosecutions can amount to a *Brady* violation and, therefore, he is entitled to the discovery. *Id.* at 5-6.  Defendant further submits that the United States contests one of his requests on the basis that the information is publicly available but fails to provide a showing of how that information could be accessed or how that fact excuses it from its discovery obligations.  *Id.* at 7-9.  Defendant submits that he provided specificity with his requests and those requests, in part, are premised on hoping to discover evidence to impeach the witnesses against him, which is an essential part of preparing a defense.  *Id.* at 9-12.

In surreply, the United States submits that Defendant's request for the *Jelinsky* and *Jacktrade, LLC* files is moot because it sent a discovery letter to Defendant on March 17, 2022,[3] after reviewing all known U.S. Attorney's Office files for the two cases.  Docket No. 139 at 1. The United States submits that this letter moots Defendant's requests for those two case files as some information for the categories of requests in Defendant's motion to compel has now been disclosed.  Docket No. 139-1 at 2-3.  The United States therefore asks the Court to deny Defendant's request to compel the discovery of these two case files as moot.  *Id.* at 3.

In response to the United States' surreply, Defendant submits that the information disclosed to him in the March 17, 2022 letter does not moot his requests to discovery the *Jelinsky* and *Jacktrade, LLC* files as the information included information that Defendant had been previously investigated as a target in one of the cases and was mentioned a number of times throughout the files.  Docket No. 143.  Defendant submits that this fact not only supports a showing that the requested information is material under both Federal Rule of Criminal Procedure 16 and *Brady*,

---

[2] Defendant uses the term "Magistrate Court" to refer to the undersigned Magistrate Judge. Docket No. 130 at 14.  There is, however, "no such thing" as Magistrate Court "in our current federal system.  Magistrate Judges are judges of the District Court."  Hon. Lisa Margaret Smith, *Top 10 Things You Probably Never Knew About Magistrate Judges*, FED. LAW., May-June 2014, at 36, 38.  The Court expects parties to use appropriate terms in filings.

[3] The United States filed an unredacted version of this discovery letter and the Court granted its request to seal the unredacted version above.  Docket No. 142.  Therefore, the Court keeps its discussion of relevant unredacted information minimal.

but also supports a finding that the request is not moot, as the disclosures were limited summaries of the information and support inferences that other files related to these prior investigations exist. *Id.* at 1-5.   Defendant therefore asks the Court to order the full disclosure of the *Jelinsky* and *Jacktrade, LLC* files as requested in his motion to compel. *Id.* at 5.

## II.   <u>LEGAL STANDARDS</u>

As a general rule, a criminal defendant has no constitutional right to discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).   However, certain discrete areas of discovery have been established over time.   Federal Rule of Criminal Procedure 16, the Jencks Act, and the rules of law articulated by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) and their progeny govern criminal discovery.

Rule 16 of the Federal Rules of Criminal Procedure imposes discovery obligations on both the United States and the Defendant.   Rule 16 grants criminal defendants a right to discovery, providing that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph . . . documents . . . within the government's possession, custody, or control . . . [that are] material to preparing the defense . . . ."   Fed. R. Crim. P. 16(a)(1)(E)(i). Information is "in the possession of the government" if the prosecutor "has knowledge of and access to the documents sought by the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).   Rule 16 "grants criminal defendants a broad right to discovery." *United States v. Stever*, 603 F.3d 7447, 752 (9th Cir. 2010).

Defining who is the "government" is important in criminal discovery matters because the prosecution does not have to scour the files of every government agency on the chance that some pertinent information, or information that the defendant deems pertinent, may be located. *Bryan*, 868 F.2d at 1036.   However, "[t]he prosecutor will be deemed to have knowledge or and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *Id.*   "In the Ninth Circuit, federal prosecutors are deemed to have 'possession and control' over material in the possession of other federal agencies as long as they have 'knowledge' of and 'access' to that material." *United States v. Fort*, 478 F.3d 1099, 1102 (9th Cir. 2007) (quoting *United States v. Santiago*, 46 F.3d 885, 893 (9th Cir. 1995)).   Agency

involvement in the investigation is "a sufficient, but not necessary, factor to show that the prosecution was in 'possession' of the agency's information." *Santiago*, 46 F.3d at 893.

In a motion to compel pursuant to Rule 16(a)(1)(E)(i), the defendant must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the United States is in possession of information helpful to the defense. *See United States v. Lucas*, 841 F.3d 796, 804 (9th Cir. 2016). The threshold is low and materiality is satisfied so long as the information will help prepare the defense. *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016) (quoting *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013)). *See also United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (quoting *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir. 1984) (holding that an item is material under Fed. R. Crim. P. 16 if it is relevant to the development of a possible defense)). However, conclusory allegations of materiality or general descriptions of the information sought are insufficient. *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1184 (9th Cir. 2013). "[M]ere speculation about materials" also does not require disclosure under Rule 16. *Lucas*, 841 F.3d at 808. A showing of materiality under Rule 16 requires a presentation of facts which "tend[s] to show that the Government is in possession of information helpful to the defense." *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). The defendant must also create an inference that the requested materials exist since the Court cannot compel the production of nonexistent materials. *United States v. Garcia-Gonzalez*, 791 F.3d 1175, 1181-82 (9th Cir. 2015) (citing *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) and Fed. R. Crim. P. 16(a)(1)(E)). Defendant bears the initial burden of establishing that the United States possesses the requested information. *See United States v. Price*, 566 F.3d 900, 910 (9th Cir. 2009).

In *Brady* and subsequent cases, the Supreme Court imposed an additional discovery obligation on the government to learn of and disclose exculpatory or impeachment evidence favorable to the defendant within the prosecution's possession. The applicable caselaw holds that, where the government suppresses favorable evidence, it violates the defendant's right to due process if the evidence is material to guilt or punishment, and that the good faith or bad faith of the government is irrelevant. *Kyles v. Whitley*, 514 U.S. 419, 432-34 (1995) (citing *Brady*, 373

U.S. at 87).  Thus, the United States has a constitutional duty to disclose exculpatory material pursuant to *Brady*.  *Id.*

Evidence is material under *Brady* if a reasonable probability exists that, if the government had disclosed the evidence to the defendant, the result of the proceeding would have been different. *See United States v. Bagley*, 473 U.S. 667, 681 (1985); *see also United States v. Acosta*, 357 F.Supp.2d 1228, 1243 (D. Nev. 2005) (materiality standard governs pretrial requests for *Brady* disclosures).  Although *Brady* should be interpreted broadly to encourage prosecutors to carry out their duty, it does not require the government to disclose every scrap of evidence that could conceivably benefit a defendant.  *See, e.g., Moore v. Illinois*, 408 U.S. 786, 795 (1972) ("We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work.").  A defendant's allegation that the requested information might be material does not entitle him to an unlimited or unsupervised search of the government's files.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  The government alone determines which information must be disclosed pursuant to *Brady*, and the prosecutor's decision is final.  *Id.*  As a result, the Supreme Court has cautioned prosecutors not to "tack[] too close to the wind." *Kyles*, 514 U.S. at 439.  The government has the responsibility to make judgment calls about what qualifies as "favorable evidence" subject to disclosure under *Brady* and its progeny, and whether certain evidence is "favorable" depends on the context of the existing or potential evidentiary record.  *Id.*  The prosecutor is a representative of the government whose interest in a criminal prosecution is "not that it shall win a case, but that justice shall be done."  *Id.* (quoting *Berger v. United States*, 295 U.S. 78 (1935)).  Therefore, "the prudent prosecutor will resolve doubtful questions in favor of disclosure."  *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)).

Impeachment evidence is exculpatory evidence within the meaning of *Brady*.  *See Giglio*, 405 U.S. at 154; *see also Bagley* 473 U.S. at 676.  *Brady*/*Giglio* information includes information bearing on the credibility of a significant witness in the case.  *United States v. Blanco*, 392 F.3d 382, 388 (9th Cir. 2004) (citations omitted).  Impeachment evidence is favorable *Brady*/*Giglio* material "if the reliability of the witness may be determinative of the defendant's guilt or

innocence." *United States v. Bracy*, 67 F.3d 1421, 1428 (9th Cir. 1995) (citing *Giglio*, 405 U.S. at 154).

The Jencks Act requires the United States to provide the defense with any statements made by a witness relating to his testimony after that witness has testified on direct examination. 18 U.S.C. § 3500. For the purpose of the Jencks Act, a statement is: (1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording or a transcription thereof, which is substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury. 18 U.S.C. § 3500(e).

A defendant is not entitled to statements that must be disclosed pursuant to the Jencks Act until after that witness has testified. 18 U.S.C. § 3500; *see also* Fed. R. Crim. P. 26.2 (incorporating the Jencks Act). When the defense seeks material that qualifies as both Jencks Act and *Brady* material, the Jencks Act controls with respect to the timing of the disclosure. *United States v. Alvarez*, 358 F.3d 1194, 1211 (9th Cir. 2004). The Court does not have the authority to compel the production of Jencks Act statements before a witness testifies. *See United States v. Mills*, 641 F.2d 785, 789-90. An order requiring early disclosure is unenforceable. *United States v. Taylor*, 802 F.2d 1008, 1118 (9th Cir. 1986).

**III.  ANALYSIS**

a.  *Jelinsky* and *Jacktrade, LLC* case files

Defendant asks the Court to order the United States to turn over the entire case files for two prior criminal cases: *United States v. Jelinsky*, 2:09-cr-00028-RLH-GWF, and *United States v. Jacktrade, LLC*, 2:12-cr-00401-GMN-PAL. Docket No. 118 at 1-2. Defendant submits that these case files establish that the United States knew of gambling intermediaries who often conduct unlicensed gambling transactions, and that these files contain information supporting the existence of gambling intermediaries, which is directly relevant to the United States' investigation into Defendant. *Id.* at 3. Defendant submits that this information is also relevant to demonstrate that

the gambling transactions in his individual tax return were fictitious and, as a result, the information is relevant to preparing his defense.  *Id.*

In surreply, the United States provides a disclosure letter it sent to Defendant on March 17, 2022, which summarizes some of the information contained in these two files.  As part of this letter, the United States reports that direct references to Defendant and similar allegations against him are contained in these files.  Since Defendant has a direct connection to these two prior prosecutions and references to Defendant exist throughout the files, the Court finds that the Rule 16 materiality burden is satisfied for these two files.  The Court therefore finds that these two files contain information relevant to the presentation of his defense at trial and the information he is seeking disclosed exists.

Accordingly, the Court **GRANTS** Defendant's request to inspect the *Jelinsky* and *Jacktrade, LLC* files.  The United States must permit Defendant to inspect the case files for 2:09-cr-00028-RLH-GWF and 2:12-cv-00401-GMN-PAL that it reviewed in accordance with its March 17, 2022, discovery letter, with the exception of any documents that are not subject to disclosure pursuant to Federal Rule of Criminal Procedure 16(a)(2).

b.  Federal reports and documentation regarding unlicensed gambling and using intermediaries related to the *Jelinsky* and *Jacktrade, LLC* cases.

Defendant asks the Court to order production of "[a]ll federal reports, narratives, memoranda, and statements regarding unlicensed gambling and use of intermediaries in or related to or associated with the case of Jacktrade, LLC, and the Jelinsky brothers."  Docket No. 118 at 2. He submits that such information must be disclosed for the same reasons that the case files for these two cases must be disclosed.

The Court construes this request as a request for the disclosure of all other reports or memorandum outside of the scope of what was contained in the case files at issue in Defendant's first request.  While the Court has found that production of the case files that the United States reviewed for the *Jelinsky* and *Jacktrade, LLC* files as material, Defendant fails to establish grounds for an order compelling these other documents.  Importantly, Defendant has not demonstrated that any reports beyond what is contained in the files at issue in the March 17, 2022 discovery letter

even exist.  Moreover, Defendant has not established that any information these documents might contain is material.  Instead, he speculates both that the documents exist and that they might have information helpful to defending against the United States' presentation that the claimed gambling withholdings were fake.  Speculation is insufficient to establish materiality.  *See Lucas*, 841 F.3d at 808.  Accordingly, the Court **DENIES** Defendant's request for an order compelling the production of this information.

      c.  Names and case numbers of persons prosecuted for using intermediaries to place unlicensed gambling wagers; law enforcement documents regarding the use of intermediaries in unlicensed or illegal bookmaking and gambling operations.

Defendant asks the Court to order production of "names and case numbers relating to persons prosecuted for using intermediaries to place unlicensed gambling wagers."  Docket No. 118 at 2.  Defendant also asks the Court to order the United States to disclose "[a]ll law enforcement reports, narratives, or memoranda in the possession of the Internal Revenue Service or the Federal Bureau of Investigation regarding the usage of intermediaries in unlicensed or illegal bookmaking and gambling operations."  *Id.* at 2.

Defendant submits that this information is relevant to the preparation of his defense because it could contain information that might be relevant to challenging the United States' presentation that the gambling wages underlying his individual tax return were fictitious, which is an essential element it must prove at trial.  *Id.* at 7-8.  Defendant further submits that this information should be disclosed because these cases had similar *modus operandi* as are at issue in his trial.  Docket No. 130 at 6.

The Court finds that an order for production of this information is not warranted.  These cases and investigations might contain some similar information to the *Jelinsky* and *Jacktrade, LLC* files if they exist (which Defendant fails to demonstrate); however, Defendant fails to demonstrate that this information is directly connected to Defendant's case, fails to establish relevance for these other cases and investigations, and further fails to identify relevant legal grounds for the Court to authorize an order for such a broad disclosure.  In short, Defendant fails

to demonstrate that these documents exist or that these cases or investigations contain information material to the instant case.

The Court also finds that this case is different from *United States v. Jernigan*, 492 F.3d. 1050 (9th Cir. 2007), a case Defendant identifies in his briefing in support of this request. *See* Docket No. 130 at 5-6. In *Jernigan*, the Ninth Circuit found that the United States violated *Brady* by failing to produce other bank robberies which occurred proximate to the bank robbery at issue in the defendant's criminal trial where eyewitnesses gave similar accounts of who the perpetrator was and the perpetrator in the other robberies used an identical modus operandi to rob banks. 492 F.3d at 1054-57. The Court found that this strikingly similar evidence, which was known to the prosecution before trial, was exculpatory because it directly bore on whether the defendant actually committed the offense at issue in her trial. *Id.* at 1056-57.

Here, Defendant does not claim that this information is relevant because it provides information that the United States has another suspect for this offense about whom it is withholding information. Defendant instead asks for a list of these cases because those cases might contain similar prosecution theories and the proof of similar defenses as to rebutting the United States' presentation that the reported gambling wages were false. The Court finds that Defendant's demonstration to the Court as to the materiality of these requests is speculative and, thus, he has failed to meet the threshold for an order compelling the production of this information. His presentation is conclusory and speculative, which is insufficient to establish materiality. *See Lucas*, 841 F.3d at 808. Moreover, it is well established that the rules governing criminal discovery do not mandate an open file discovery policy where Defendant can simply browse through the United States' files in hopes of potentially discovering helpful information or permit Defendant to engage in a fishing expedition. *See Taglianetti v. United States*, 394 U.S. 316, 317 (1969); *Jencks v. United States*, 353 U.S. 657, 667 (1957). The Court therefore **DENIES** Defendant's request to order the United States to disclose this information.[4]

---

[4] Moreover, under its *Brady* obligations, the United States does not have an obligation to disclose information if Defendant has enough information to be able to ascertain the material on his own. *See Milke v. Ryan*, 711 F.3d 998, 1017 (9th Cir. 2013) (quoting *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991)). In his reply, Defendant proffers in part that compulsion is necessary because the United States objected on the grounds that this information is in the public

d.  <u>Law enforcement documents regarding Churchill Downs, Euro Racing Services, Inc.,</u>
<u>Elite Turf, New York City OTB, and other gambling entities the government plans to</u>
<u>call in its case in chief; law enforcement documents regarding National Bank Financial</u>
<u>Group</u>

Defendant asks the Court to order the United States to disclose all "law enforcement reports, investigations, narratives, or memoranda in the possession of the Internal Revenue Service, Federal Bureau of Investigation, or any other federal agencies regarding Churchill Downs, Euro, Racing Services Inc., Elite Turf, New York City OTB, and any other gambling entities the government plans to call in its case in chief." Docket No. 118 at 2. Defendant also asks the Court to order the United States to disclose all "law enforcement reports, investigations, narratives, or memoranda in the possession of the Internal Revenue Service, the Federal Bureau of Investigation, or any other federal agencies regarding National Bank Financial Group." *Id.*

Defendant submits that the United States must disclose documents related to Churchill Downs, Euro, Racing Services Inc., Elite Turf, New York City OTB, and other gambling entities that it plans to call in its case in chief because it is necessary to vindicate his rights under the confrontation clause to challenge law enforcement on the scope of its investigation and to impeach the witnesses against him. *Id.* at 8-11. Specifically, Defendant submits the United States will attempt to elicit testimony from these entities to help establish that Defendant's claimed winnings are false and, therefore, any potential investigations into irregular business practices or tax violations are crucial as impeachment evidence. *Id.* at 9-10. Defendant further submits that his discovery request is warranted because some of the allegedly false 1099 forms at issue in the instant case at trial will involve forms that the parent company of National Bank Financial Group said it had no records of and denied issuing. *Id.* at 10 n.43. Defendant proffers that, if the United States ever investigated this company for tax violations or irregular business practices, it must disclose such information to him as part of his confrontation clause rights to impeach the witnesses against him. *Id.* at 10.

---

record but failed to provide any information about how Defendant would be able to search records to identify similar cases. Docket No. 130 at 7-9. The United States has no obligation to demonstrate how discovery might be conducted to find information in the public domain.

The Court finds that Defendant fails to demonstrate that such information actually exists; rather, he submits that, if it does, it should be produced to him.[5]  *See* Docket No. 9-11.  *See also Garcia-Gonzalez*, 791 F.3d at 1181-82.  Moreover, Defendant essentially asks the Court to deem that this information must be disclosed pursuant to *Brady* and *Giglio*, but prior to trial, it is the United States and not the Court who determines whether something is material for the purposes of *Brady* and *Giglio* disclosures.  *See United States v. Lucas*, 841 F.3d 796, 807 (9th Cir. 2016) ("It is the government, not the defendant or trial court, that decides prospectively what information, if any is material and must be disclosed under *Brady*").  The Court denies any request from the parties to determine whether this request constitutes *Brady* material before trial.  Finally, to the extent that any information encompassed by this request would have to be disclosed pursuant to the Jencks Act, the Court would only order such a disclosure after the witness has testified on direct examination.  *See Taylor*, 802 F.2d at 1118.  Accordingly, the Court **DENIES** Defendant's request for an order mandating the production of this information.

## IV.    CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Court **GRANTS** in part and **DENIES** in part Defendant's motion.  Docket No. 118.  The United States must permit Defendant to inspect the case files for 2:09-cr-00028-RLH-GWF and 2:12-cv-00401-GMN-PAL that the United States reviewed in accordance with its March 17, 2022 discovery letter, with the limitations set forth above.

IT IS FURTHER ORDERED that the Court **GRANTS** the United States' motion for leave to file surreply.  Docket No. 139.

---

[5] Defendant's argument that he should have unfettered access to any and all law enforcement files related to these potential witnesses concerns the Court.  The Court will not authorize fishing expeditions.  *See Jencks*, 353 U.S. at 667.

IT IS FURTHER ORDERED that the Court **GRANTS** the United States' motion to seal Exhibit B to its surreply.  Docket No. 142.

IT IS SO ORDERED.

Dated: April 1, 2022.

_____
NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE

13