# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　Plaintiff,<br>v.<br>ANTHONY UVARI<br>　　　Defendant. | Case No. 2:18-cr-00253-APG-NJK<br>**Report and Recommendation**<br>[Docket Nos. 194, 247] |

Pending before the Court is Defendant's motion to dismiss for outrageous government conduct. Docket Nos. 194, 196 (exhibits), *see also* Docket No. 247 (redacted motion to dismiss). The United States responded, Docket No. 214, and Defendant replied, Docket No. 231. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons more fully discussed below, the undersigned **RECOMMENDS** that Defendant's motion be **DENIED.**

## I.　　BACKGROUND

This motion arises out of the protracted and numerous discovery issues in this case. The parties are intimately familiar with the factual and procedural history of this case, as demonstrated by their nearly 40 pages of briefing dedicated to the topic. Docket Nos. 194 at 4-14, 214 at 10-38. The Court will therefore review only the background information immediately relevant to Defendant's motion.

The parties engaged in efforts to resolve this matter pre-indictment. *See* Docket No. 214 at 16. However, those efforts failed, and Defendant was indicted on August 21, 2018, on four counts of making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1). Docket No. 1. Defendant filed his first motion to compel on September 18, 2019. Docket No. 23. That motion was denied on the basis that all documents sought had been produced. Docket Nos. 46, 53 at 5 (transcript of hearing). Defendant subsequently filed two more motions to compel, Docket Nos. 118, 150, both of which were granted in part and denied in part, Docket Nos. 147, 179. In

the order resolving Defendant's third motion to compel, United States District Judge Andrew P. Gordon found that the United States' discovery conduct up to that point was "troubling" and ordered the United States to "conduct a diligent search for discoverable information…." Docket No. 179 at 2, 4.

Given the nature of the discovery in this case, the parties agreed to two stipulated protective orders. Docket Nos. 83, 169. The first protective order addressed discovery containing certain tax records and the second protective order addressed discovery provided from the government's case files, some of which contained information pertaining to confidential sources. *Id.* These protective orders enabled Defendant's counsel to review and copy covered files for use in Defendant's case, while also addressing the United States' concerns regarding unnecessary disclosure of protected or confidential source information. Docket No. 214 at 23.

It was the discovery produced by the United States in response to the Court's order at Docket No. 147 that prompted the instant motion. Docket No. 194 at 7-8. The disclosed discovery relevant to this motion includes a document memorializing the conference between counsel for the uncharged co-target in this case and Department of Justice Tax Division attorneys, after which the DOJ Tax Division declined to charge the co-target. Docket No. 194 at 10. The relevant disclosures also include information pertaining to Defendant's use of gambling intermediaries. *Id.* at 13. Defendant alleges that these documents contain substantial information relevant to his defenses and theory of the case. Consequently, Defendant submits, the United States' failure to disclose this information prior to the Court's orders constitutes a violation of the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), egregious enough to warrant dismissal of the case, Docket No. 194 at 1-2.

Defendant has previously moved this Court to dismiss the indictment to address the United States' discovery conduct. He first filed a motion to dismiss for spoilation of evidence on September 20, 2020. Docket No. 57. He subsequently filed a motion to dismiss counts one and two of the indictment as time barred on August 13, 2021. Docket No. 89. Both motions were denied by the Court. Docket Nos. 78 (adopting Report and Recommendation at Docket No. 71), 101 (adopting Report and Recommendation at Docket No. 92).

## II. STANDARDS

Defendant alleges both that multiple *Brady* violations occurred in this case, and that those violations were severe enough to warrant dismissal of the case.

### A. Required disclosures under *Brady*

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "Favorable evidence includes both exculpatory and impeachment material that is relevant either to guilt or punishment." *Mike v. Ryan*, 711 F.3d 998, 1012 (9th Cir. 2013) (citing *United States v. Bagley*, 473 U.S. 667, 674-76 (1985)). It is immaterial whether the prosecution's failure to disclose was wilful or inadvertent. *United States v. Agurs*, 427 U.S 97, 110 (1976); *Mike*, 711 F.3d at 1012. There is no strict timeline for the prosecution to disclose *Brady* evidence, so long as it is disclosed "in time for it to be of use at trial." *United States v. Fernandez*, 231 F.3d 1240, 1248 n.5 (9th Cir. 2000) (citing *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988)).

Though initially limited to favorable evidence requested by the defense, *Brady's* disclosure obligations have been expanded to require the prosecutor to disclose any favorable information in its possession, regardless of whether the defense requested it or not. *Agurs*, 427 U.S at 106-07; *Bagley*, 473 U.S. at 682. *Brady's* disclosure requirements are not limited to evidence in the prosecution team's possession. Rather, "[t]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *accord Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) (per curiam). Evidence is material for *Brady* purposes "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. When evaluating materiality, any suppressed evidence must be considered collectively, not item by item. *Kyles*, 514 U.S. at 436. "[S]trictly speaking, there is never a real '*Brady* violation' unless the non-disclosure was so serious that there is a

3

reasonable probability that the suppressed evidence would have produced a different verdict." *United States v. Acosta*, 357 F. Supp. 2d 1228, 1232 (D. Nev. 2005) (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).

In short, to prove a *Brady* violation occurred, a defendant must show that "[1] the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the [United States], either willfully or inadvertently; and [3] prejudice must have ensued." *United States v. Olsen*, 704 F.3d 1172, 1181 (9th Cir. 2013) (internal quotations and citations omitted).

B.  Dismissing an indictment

A court may dismiss an indictment for either of two reasons. "First, a district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation. Second, if the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *United States v. Chapman*, 524 F.3d 1073, 1084 (9th Cir. 2008) (quoting *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)). "For a due process dismissal, the Government's conduct must be so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Smith*, 924 F.2d 889, 897 (9th Cir. 1991) (internal citations omitted). "The Government's involvement must be *malum in se*…" and the "conduct must be repugnant to the American system of justice." *Id.* (internal citations and quotations omitted).

"A court may exercise its supervisory powers to dismiss an indictment in response to outrageous government conduct that falls short of a due process violation." *United States v. Ross*, 372 F.3d 1097, 1109 (9th Cir. 2004) (citing *Barrera-Moreno*, 951 F.2d at 1091). When exercising its supervisory powers, a court should consider whether flagrant misbehavior has occurred, whether that misbehavior has substantially prejudiced the defendant, and whether lesser remedies are available. *See, e.g.*, *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020). The Ninth Circuit has "recognize[d] that, in theory, a lesser remedy will always be available." *Bundy*, 968 F.3d at 1043. Therefore, to properly dismiss an indictment "a district court must conclude that no lesser remedy will fully address the damage caused by the government's misconduct." *Id.*

4

### III.     ALLEGED *BRADY* VIOLATION

Defendant submits that the United States has violated its *Brady* obligations in this case. Docket 194 at 15. Specifically, Defendant submits that the United States should have disclosed the Department of Justice Tax Division attorney's report regarding this case's uncharged co-target and evidence relating to Defendant's use of gambling intermediaries years ago. *Id.* at 15-18. The United States submits that no *Brady* violation occurred because none of the recently disclosed evidence is favorable to Defendant. Docket No. 214 at 33. Additionally, the United States submits that it did not suppress evidence because the disputed evidence was disclosed before trial, and that, therefore, Defendant suffered no prejudice. *Id.* at 35.

#### A.     Favourability to Defendant

The parties disagree whether the recently-disclosed evidence is favorable to Defendant. *Compare* Docket No. 214 at 33-34 *with* Docket No. 231 at 8-11. The United States submits that the evidence is either inculpatory or irrelevant. Docket No. 214 at 33-34. Defendant submits that the existence of rebuttal arguments does not negate the favourability of the disclosed evidence. Docket No. 8. He further submits that the tax attorney's report serves both to support his reliance defense and to put the government on notice of his gambling through intermediaries defense, and that the remaining recently-disclosed evidence supports both those defenses. *Id.* at 8-11.

Evidence is favorable to a defendant if it is exculpatory or can be used to impeach the prosecution's witnesses. *Bagley*, 473 U.S. at 676 (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Cases are to be resolved toward a finding that any questionable evidence is favorable and thus subject to disclosure. *Cf. Agurs*, 427 U.S at 108 ("[B]ecause the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure"); *Kyles*, 514 U.S. at 439; *Gantt v. Roe*, 398 F.3d 908, 912 (9th Cir. 2004) (noting that the "favorable to the accused" standard is low). Additionally, evidence being inculpatory does not necessarily mean it is exempt from *Brady's* disclosure requirements. *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) (citing *Kyles*, 514 U.S. at 446). Even inculpatory evidence may still be used for impeachment purposes or other efforts to undermine the prosecution's case. *Id.*

5

Defendant has presented theories as to how the evidence will bolster his defenses to the conduct charged. Docket No. 231 at 8-11. He has therefore shown how the evidence may be exculpatory. Accordingly, the Court finds that the recently disclosed evidence is favorable to Defendant.

### B. Suppression of Evidence

The parties also disagree about whether evidence has been suppressed in this case. Defendant submits that his various counsel have been attempting to obtain portions of the recently-disclosed evidence for six years. Docket No. 194 at 16. To further support that suppression occurred, he submits that the United States' recent disclosures are "too little, too late, because an incomplete or inadequate response to a *Brady* request can cause the defense to 'abandon lines of independent investigation, defenses, or trial strategies that it might otherwise have pursued.'" *Id.* at 18 (internal citation omitted). The United States submits that, since the evidence was disclosed prior to trial, there can be no prejudice to Defendant. Docket No. 214 at 41.

*Brady* disclosures do not have to occur within a certain timeframe. *Fernandez*, 231 F.3d at 1248 n.5. In determining whether *Brady* evidence was timely disclosed, the inquiry is "whether the lateness of the disclosure so prejudiced [Defendant's] preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial." *United States v. Felix*, 727 F. App'x 921, 924 (9th Cir. 2018) (quoting *United States v. Miller*, 529 F.2d 1125, 1128 (9th Cir. 1976)).

The Court finds that Defendant fails to show that any evidence was suppressed in this case. The United States, in compliance with an order of this Court, disclosed the recently-produced evidence by July 29, 2022. Docket No. 214 at 37. Trial for this case is currently scheduled to commence December 5, 2022. Docket No. 183. By the time of trial, Defendant will have had more than four months to review this evidence and incorporate it into his trial strategy. Additionally, the United States concedes that Defendant may be entitled to a trial continuance. Docket No. 214 at 53. Since Defendant has had such a significant amount of time to review the disclosed evidence, and may even have more time, the Court finds that the recently-disclosed evidence can not be considered suppressed for purposes of *Brady*. *See, e.g., United States v.*

*Shelton*, 588 F.2d 1242, 1247 (9th Cir. 1978) (concluding that 500 pages of documents disclosed the day before trial did not prejudice the defendant); *United States v. Cooper*, 291 F. App'x 98, 98 (9th Cir. 2008) (holding that defendant failed to show prejudice from disclosure of DNA evidence six days before trial). Consequently, Defendant's *Brady* claim fails.

    C.    <u>Prejudice</u>

Though Defendant fails to show that any evidence was suppressed, the Court will briefly address the issue of prejudice to the extent it is relevant to Defendant's request to dismiss the case under the Court's supervisory powers. Defendant submits that he has been prejudiced by the United States' delayed disclosures in three ways. First, he submits that he has been prejudiced by having to reveal defense strategies to obtain the evidence from the United States. Docket No. 194 at 21. Second, he submits that the United States has been able to strengthen its case against him because of the revealed strategies. *Id.* at 23. Finally, he submits that the produced evidence is "stale," robbing him of his ability to further investigate or expand upon it. *Id.* at 24. The United States responds that *Brady* focuses on the evidence's bearing on guilt or innocence and not on a defendant's ability to prepare for trial. Docket No. 214 at 44. It also submits that Defendant revealed many of his potential defenses outside of the discovery process, and that he could have taken alternative steps to preserve the secrecy of his trial strategy. *Id.* at 45. Finally, it submits that Defendant fails to show how the "stale" evidence prejudiced him beyond mere conjecture. *Id.* at 46-47.

The Court finds that Defendant fails to show that he has been prejudiced by the recent disclosure of evidence. It is well-established that the *Brady* materiality standard only applies to evidence bearing on a defendant's guilt or innocence; evidence's effect on a defendant's trial strategy is not a factor to be considered in the disclosure determination. *Agurs*, 427 U.S. at 113 n. 20; *United States v. Rogers*, 960 F.2d 1501, 1511 (10th Cir. 1992); *Matthews v. Johsnon*, 201 F.3d 353, 361 (5th Cir. 2000) ("[D]efining the materiality requirement in terms of defense strategies would be at odds with the scope and purpose of the *Brady* rule"); *United States v. Fallon*, 348 F.3d 248, 252 (7th Cir. 2003) ("Materiality focuses not on trial preparation, but instead on whether earlier disclosure would have created a reasonable doubt of guilt"); *England v. Hart*, 970 F.3d 698,

7

(6th Cir. 2020) ("[T]he prejudice inquiry 'does not extend to assessments of the impact that the suppression may have had on Defendants' subsequent trial strategy'") (internal citations omitted). Here, the United States provided Defendant the relevant evidence well before trial. Defendant's arguments that he has been prejudiced by having to reveal strategies and that the evidence's staleness impaired his trial preparation therefore fail. Defendant has had substantial time to conduct independent investigations and incorporate the evidence into his trial strategy.

Preventing the United States from being able to refine its case after the disclosure of *Brady* evidence has warranted dismissal of the indictment in other cases. *See Chapman*, 524 F.3d at 1087-88; *accord Bundy*, 968 F.3d at 1044-45. Both *Chapman* and *Bundy*, however, are different from the instant case. In both cases, the *Brady* evidence was disclosed after trial began. In *Chapman,* the United States disclosed 650 pages of additional information three weeks into the trial. 524 F.3d at 1078-1079. In *Bundy*, multiple iterations of *Brady* disclosures occurred after trial had begun. 968 F.3d at 1025-29. In both cases, the prosecution was able to present its arguments at trial, observe the defendants' actual trial strategies, assess the juries' reactions to both sides' arguments, and would have been able to use that information to enhance its case during any subsequent retrial. Here trial has not begun. The United States has had no chance to present its theories to a jury or observe how Defendant will argue his case. To the extent the United States has incorporated the disclosed evidence into its trial strategy, such incorporation does not rise to the level of prejudice that the defendants in *Chapman* and *Bundy* experienced. Consequently, the Court finds Defendant has not been prejudiced by the relevant disclosures, and therefore, has failed to prove a *Brady* violation occurred.

### IV.   DISMISSAL OF THE INDICTMENT

Defendant asks the Court to dismiss the indictment because the United States' delayed disclosures rise to the level of a due process violation. Docket No. 194 at 19. He also submits that the indictment should be dismissed under the Court's supervisory powers to address the United States' "outrageous and willful conduct," and to discourage such conduct from happening in the future. *Id.* at 24-25. The United States submits that its conduct neither rises to the level of a due

process violation nor is flagrant enough to warrant dismissal under the Court's supervisory powers. Docket No. 214 at 49-51.

A Court may dismiss an indictment to address a due process violation or under its supervisory powers for conduct that does not rise to the level of a due process violation. *Chapman*, 524 F.3d at 1084. Dismissal for a due process violation requires conduct that is "so outrageous as to violate the universal sense of justice." *Smith*, 924 F.2d at 897. "The due process argument is usually raised in situations where law enforcement conduct involves extreme physical or mental brutality or where the crime is manufactured by the government from whole cloth." *Bundy*, 968 F.3d at 1030 (quoting *United States v. Green*, 962 F.2d 938, 942 (9th Cir. 1992)). Defendant fails to prove a *Brady* violation occurred here and, therefore, fails to prove any due process violation occurred, let alone one egregious enough to warrant dismissal.

A court may dismiss an indictment under its supervisory powers when there has been (1) flagrant prosecutorial misconduct that resulted in (2) substantial prejudice to the defendant. *Id.* at 1031 (citing *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993)). "The court's exercise of its supervisory powers protects the integrity of the federal courts and prevents the courts from making themselves accomplices in willful disobedience of law." *Id.* at 1030 (internal citation and quotations omitted). As discussed above, Defendant fails to prove either that evidence was suppressed in this case or that he experienced prejudice from the United States' conduct. Accordingly, dismissal of the indictment under the Court's supervisory powers is not appropriate.

V.  **CONCLUSION**

For the reasons more fully discussed above, **IT IS RECOMMENDED** that Defendant's motion to dismiss for outrageous government conduct be **DENIED**. Docket Nos. 194, 247.

Dated: November 1, 2022

_____
Nancy J. Koppe
United States Magistrate Judge

## **NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).